# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Austin Kenny,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Janet Yellen, Secretary, U.S. Department of the Treasury,<br><br>　　　　　　Defendant. | Civil action No: 3:21-cv-1321-MGL-PJG<br><br>**COMPLAINT**<br><br>**(Rehabilitation Act of 1973,<br>29 U.S.C. § 701 *et seq.*)**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW THE PLAINTIFF, Austin Kenny, who would respectfully show unto this Honorable Court the following:

## PARTIES

1. Plaintiff Austin Kenny is an individual residing in Kershaw County, South Carolina.

2. Defendant Janet Yellen is Secretary of the U.S. Department of the Treasury ("Defendant" is hereafter used to refer to the U.S. Department of the Treasury).

## JURISDICTION AND VENUE

3. This Court has jurisdiction of the action under 42 U.S.C. § 2000e-5(t) and 28 U.S.C. § 1345. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because it is the judicial district in which Plaintiff would have worked but for the alleged unlawful employment practices described herein.

## FACTUAL ALLEGATIONS

4. Plaintiff is a U.S. Navy veteran who has been designated 100%

1

Permanent and Totally Disabled by the U.S. Department of Veterans Affairs.

5.     Plaintiff has Crohn's Disease related to Gulf War Syndrome, as well as a left knee injury.

6.     Plaintiff began working as a Project Manager for the Internal Revenue Service, a division of Defendant, on September 3, 2018.

7.     Plaintiff's worksite was the Enterprise Program Management Office (EPMO), located in Charlotte, North Carolina.

8.     Plaintiff worked with all the members of his team remotely from the Charlotte, North Carolina worksite. He had no in-person contact with colleagues.

9.     Plaintiff found that driving to and from the worksite aggravated his Crohn's disease; he also found that his Crohn's Disease flare ups are impossible to predict. It became apparent that Reasonable Accommodations were necessary to enable him to continue in his employment.

10.    On or about October 31, 2018, Plaintiff contacted his frontline manager, Robert Buckstad, to request reasonable accommodations due to his disability. Because of the unpredictability of his Crohn's flareups, Plaintiff sought as a reasonable accommodation the option of working from home as needed. He also requested the closer duty station of the Internal Revenue Service's office in Columbia, South Carolina so he did not have to spend as much time on the road, as the longer drive aggravated his condition. The Columbia location was closer to his medical providers in case of an emergency. Moreover, commuting to the Columbia location would have provided him more time to rest without the longer commute time.

11.    None of Plaintiff's team members worked in the Charlotte office.

12. Plaintiff's contact with his team members was exclusively by phone or other electronic means.

13. Defendant allows nondisabled employees who have been employed for at least one year to telework from home.

14. Plaintiff's reasonable accommodation request would enable Plaintiff to perform his essential functions by being able to be present at work remotely, which he was from Defendant's Charlotte location since none of his team members or project members were located with him in the Charlotte office.

15. Likewise, Plaintiff's alternative reasonable accommodation request of working from Defendant's Columbia office would enable Plaintiff to perform his essential functions at work remotely since none of his team members or project members were located with him in the Charlotte office.

16. On or about November 13, 2018, Buckstad prepared a memorandum for the record to document his support for the Reasonable Accommodation that Plaintiff requested.

17. On or about December 7, 2018, Buckstad completed the manager portion of the Reasonable Form (Form 13661). He recommended approval and forwarded it to the Reasonable Accommodation office for processing.

18. On or about November 16, 2018, Cynthia E. Washington, the Defendant's EEO Specialist/Reasonable Accommodation Coordinator, was assigned to Plaintiff's Reasonable Accommodation request.

19. Buckstad expressed that Plaintiff's Reasonable Accommodation request would not present a hardship, however, Gbemi Acholonu, Senior Manager, told

Buckstad that she disagreed with the telework request. Acholonu overruled Buckstad's support for approval of telework.

20. Throughout the rest of 2018 and early 2019, Plaintiff continued to follow up with Washington to provide the most up-to-date information about his medical conditions and to secure a decision about his request for reasonable accommodation. Six months passed without any decision on his request.

21. In March 2019, Plaintiff had a mid-year evaluation. He was rated "meets." The evaluation recognized that Plaintiff was still a new employee and that he would take on additional responsibility as his employment progressed.

22. On or about April 11, 2019, Washington reviewed documentation provided by Plaintiff regarding his medical conditions and found him to have medical diagnoses that impact major life activities or major bodily functions. Washington wrote that "[b]ased on the currently available medical information, a transfer of duty station would decrease the employee's commute time. This would allow for him to conserve energy which may be decreased due to limitations imposed by his [redacted] system as well as his sleeping condition." Washington also indicated that it was reasonable to allow Plaintiff to attempt to telework four days per month during the times of flare ups and use leave on those days for the times he cannot perform his job duties while teleworking.

23. On or about April 30, 2019, six months after Defendant made his request for a Reasonable Accommodation, Defendant's manager, Queen and Washington contacted Plaintiff about his request. They offered an alternate accommodation of working from home on pre-scheduled days up to two days a week, with an expiration of September 4, 2019. Plaintiff could not accept this offer because the nature of his

4

disability is such that it could flare up without notice and his work from home could not be prescheduled. Also, it did not address the impact of the commute on his disability. Moreover, his conditions are chronic and will persist for his lifetime, so Plaintiff could not accept an accommodation that would expire on September 4, 2019—then only four months away.

24.     On or about May 6, 2019, Plaintiff had a follow up meeting via telephone with management, including Acholonu, who offered the accommodation of remote for three days a week instead of two, again with days prescheduled, and expiration date of September 4, 2019. Defendant again declined this offer as it did not reasonably accommodate his disability.

25.     Thereafter, Queen and Acholonu retaliated against Plaintiff for requesting a reasonable accommodation and for turning down their insufficient offer of accommodation.

26.     Queen and Acholonu began subjecting Plaintiff to new levels of scrutiny and hostility in email communications and by telephone. The tone of emails and other communications changed.

27.     On or about May 20, 2019, Plaintiff sent an email to Queen, Acholonu, and Buckstad with an update about the ITPE deliverables for the scheduling team. Queen responded to the email, "Wow! Such a massive brain dump for management to navigate through. Is this meant to be a replacement for the bi-weekly meetings (requested since March) that have not occurred?"

28.     This email had a distinctly different tone and a degree of hostility that Plaintiff had not experienced prior to his turning down of Defendant's alternative

5

accommodation.

29. On or about May 21, 2019, Plaintiff responded that his email was intended as a detailed status update based on "a recent indication…that I was lacking in this area." He denied that the email was a replacement for scheduled meetings. He also objected to Queen's harassment and bullying and indicated that the treatment was retaliation for having requested a reasonable accommodation and declining the Defendant's offer of an alternative accommodation.

30. The Defendant discharged Plaintiff on June 12, 2019.

31. Acholonu provided pretextual reasons for her decision to discharge Plaintiff, which include but are not limited to:

a. In its termination letter, Defendant claimed that, on December 19, 2018—seven months prior to the decision to terminate—management had an urgent request and that Plaintiff could not be reached via Skype for 50 minutes. Regarding this allegation, in Plaintiff's unemployment benefits hearing, Queen offered contradictory testimony claiming that she had attempted to reach Plaintiff on his personal cell phone, not by Skype, and that he had not answered. Plaintiff at that hearing said that he had put his personal cell phone in "do not disturb" mode to avoid distractions and that he was still accessible through normal means used by Defendant, including Skype. This supposed concern had not been mentioned in Plaintiff's mid-year review in March 2019. This stale allegation, contradicted by sworn testimony of Defendant's own management, is pretextual.

b. Defendant alleged that a Schedule for Data Access Strategy that Plaintiff had submitted on May 20, 2019 was of sub-par quality. However, Defendant ignored the

6

fact that Plaintiff could not complete this project without involvement of an individual who was on leave for nearly the entire two weeks that Plaintiff had to complete the project. Moreover, the third-party vendor utilized for the project had not signed a contract with Defendant and would not release necessary information.

      c.      Defendant alleges that Plaintiff failed to proactively guide a junior team member on expectations and preparation to back-fill in the event of absences. Defendant never identified who this individual is, and Plaintiff is unaware of the facts supporting this allegation. Moreover, Defendant did not bring this concern to Plaintiff's attention until his termination.

      d.      Defendant alleged that Plaintiff had failed to proactively communicate to delivery partners needed data points and the impact of missing deliverables ahead of due dates. This rationale is false. Plaintiff was the schedule coordinator and kept all parties up to date on the schedule through meetings, weekly emails, and document creation. However, he was not the lead project manager.

      e.      Defendant alleged that Plaintiff did not display a strong commitment to ensure the successful completion of tasks and the project, citing that he missed more than 50% of key scheduling activities on new-end-date for Congressional reporting project. This is false and pretextual.

      f.      Defendant faulted Plaintiff for a contractor presenting or actively engaging delivery partners in 10 out of 12 planning sessions beginning on March 14, 2019. This allegation is pretextual because Plaintiff was a remote participant in these meetings. As the contractor was present in person, it made more sense for him to have an active role in the meeting. Moreover, Plaintiff was having connectivity problems with his voice over

IP phone and headset in the Charlotte office during the one of the meetings and involved the contractor to avoid the difficultly of losing a connection during a key meeting.

32. On June 14, 2019, Plaintiff contacted Defendant's Equal Employment Opportunity Counselor and pursued resolution through the EEO process.

33. On August 8, 2019, Plaintiff received a Notice of Right to File.

34. On August 9, 2019, Plaintiff filed an Individual Complaint of Employment Discrimination with the Department of the Treasury alleging disability discrimination.

35. On December 28, 2017, Plaintiff filed a Complaint of Employment Discrimination. He pursued resolution through the EEO process (Agency Case No. IRS-19-1140-F; EEOC Case No.: 430-2020-00213X).

36. On January 17, 2020, Plaintiff requested a hearing before the Equal Employment Opportunity Commission.

37. Plaintiff has exhausted his administrative remedies.

38. Plaintiff suffered damages because of Defendant's actions, including loss of income, stress, mental anguish, humiliation, loss of sleep, harm to his reputation, attorney's fees, and costs.

**FOR A FIRST CAUSE OF ACTION**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.***
**Discrimination based upon Disability**

39. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

40. Plaintiff has a disability within the meaning of the Rehabilitation Act of 1973 was regarded as having such a disability by Defendant and had a record of

disability all of which was known to Defendant at all relevant times herein.

41. Defendant discriminated against Plaintiff for his disability in violation of the Rehabilitation Act of 1973 by treating him differently than other employees.

42. Defendant subjected Plaintiff to unduly harsh treatment and singled him out due to his disability.

43. Defendant subjected Plaintiff to pretextual disciplinary actions and discharge due to his disability.

44. Defendant knowingly and willfully retaliatied against Plaintiff in violation of Section 504 of the Rehabilitation Act of 1973 as described herein above.

45. As a direct result and consequence of Defendant's actions which violated the Rehabilitation Act of 1973, Plaintiff has suffered damages because of Defendant's actions including but not limited to back pay, front pay, attorney's fees, costs, actual damages, consequential damages, humiliation, harm to reputation, emotional distress, severe pain, and physical exhaustion.

**FOR A SECOND CAUSE OF ACTION**
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.***
**Denial of Reasonable Accommodation**

46. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

47. The Rehabilitation Act of 1973 places a duty on Defendant to provide reasonable accommodations to employees with disabilities.

48. Plaintiff's request for the accommodation of working from home, or in the alternative, working out of Defendant's Columbia, South Carolina office, due to his disability was reasonable.

49. Defendant worked remotely from the Charlotte office. No members of his team worked in the office and his only contact with them was electronic.

50. Defendant's management took six months to respond to Plaintiff's Reasonable Accommodations request—an unreasonable delay far outside of the timeline provided by Defendant's own policies.

51. Defendant unlawfully denied Plaintiff's request for reasonable accommodation.

52. Defendant allows many employees to telework, even when they have no disability. Queen, during Plaintiff's unemployment benefits appeal hearing, indicated that Defendant would have qualified for telework had he not been discharged before one year from his date of hire.

53. Defendant knowingly and willfully retaliatied against Plaintiff in violation of Section 504 of the Rehabilitation Act of 1973 as described herein above.

54. As a direct result and consequence of Defendant's actions which violated the ADA, Plaintiff suffered damages because of Defendant's actions including but not limited to back pay, front pay, attorney's fees, costs, actual damages, consequential damages, humiliation, harm to reputation, emotional distress, severe pain, and physical exhaustion.

### FOR A THIRD CAUSE OF ACTION
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791** *et seq.*
**Retaliation**

55. Plaintiff re-alleges and incorporates by reference the allegations set forth above.

56. Management's tenor of communications and degree of scrutiny changed after Plaintiff turned down Defendant's alternate offer of accomodation, and especially, after he complained of disability discrimination and retaliation. Events and supposed concerns that had not been noted in Plaintiff's midyear review in March 2019, only two months before, suddenly became grounds for discharge.

57. Defendant knowingly and willfully retaliatied against Plaintiff in violation of Section 504 of the Rehabilitation Act of 1973 as described herein above.

58. As a direct result and consequence of Defendant's actions which violated the Section 504, Plaintiff suffered damages because of Defendant's actions including but not limited to back pay, front pay, attorney's fees, costs, actual damages, consequential damages, humiliation, harm to reputation, emotional distress, severe pain, and physical exhaustion.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court:

A. Enjoin Defendant from:
   a. Subjecting employees to discrimination and harassment based on disability; and,
   b. Retaliating against employees who engage in activity protected under Section 504 of the Rehabilitation Act of 1973;
B. Order Defendant to develop and implement appropriate and effective measures designed to prevent discrimination, harassment, and retaliation, including but not limited to policies and training for employees and managers;
C. Order Defendant to develop appropriate and effective measures to receive

complaints of discrimination, harassment, and retaliation as well as a process for investigating such complaints;

D. Reinstate Plaintiff to his position with Defendant;

E. Award actual and compensatory damages to Plaintiff to fully compensate him for his injuries caused by Defendant's discriminatory, harassing, and retaliatory conduct;

F. Grant Plaintiff his reasonable attorney's fees and costs; and,

G. Award such additional relief as justice may require.

Respectfully Submitted,

s/ Jack E. Cohoon

Jack E. Cohoon (Fed. Bar ID: 9995)
BURNETTE SHUTT & MCDANIEL, PA
P.O. Box 1929
Columbia, South Carolina 29202
Tel.  (803) 904-7914
Fax (803) 904-7910
jcohoon@burnetteshutt.law

**ATTORNEY FOR PLAINTIFF
AUSTIN KENNY**

Columbia, South Carolina

May 4, 2021